UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL CAPICCHIONI, on behalf of himself and all other similarly situated,<br><br>                                              Plaintiff,<br><br>    vs.<br><br>AMERICREDIT FINANCIAL SERVICES, INC.; AMERICREDIT CORP.; DOES 1 through 25, inclusive,<br><br>                                              Defendants. | CASE NO. 06CV0014 IEG (NLS)<br><br>**ORDER GRANTING SUMMARY JUDGMENT** |

Presently before the Court is a motion for judgment on the pleadings by AmeriCredit Financial Services and AmeriCredit Corporation, the parent company of AmeriCredit Financial Services (collectively "defendants"), in the above titled case. The defendants present materials outside the pleadings that the Court does not exclude, thus converting the defendants' motion for judgment on the pleadings to a motion for summary judgment. For the following reasons, the court **GRANTS** summary judgment for the defendants.

**BACKGROUND**

**A.     Factual Background**

This is a class action lawsuit brought by Paul Cappicchioni ("plaintiff"), a California resident, against the defendants for one count of improper telephone call monitoring in violation of California Penal Code §637.2 (West 2006). The plaintiff's claim for improper monitoring arises

out of a series of telephone calls between the plaintiff and the defendants' employees.[1]  During September and October of 2005, the plaintiff, who is not and never was a customer of the defendants, received a number of phone calls on his cell phone from the defendants' account representatives in regard to an automobile finance account of "Constantine Tiana."  (Compl. ¶ 8.)  The plaintiff informed defendants' employees that he was unfamiliar with Mr. Tiana and any related automobile finance account.  (Id.)  The defendants' account representatives insisted the plaintiff was familiar with Mr. Tiana and the account.  Consequently, the defendants' representatives continued to contact the plaintiff over the phone.  (Id.)

The conversation that spawned this cause of action occurred on or around October 20, 2005.  (Id. at ¶ 11.)  The plaintiff received a phone call from one of defendants' male employees who again inquired about Mr. Tiana.  (Id.)  The plaintiff denied any knowledge of Mr. Tiana and the account, at which time the employee allegedly became verbally hostile and accused the plaintiff of deception.  (Id.)  In the middle of this conversation, without any introduction or notification, another male employee began speaking over the first employee and began arguing with the plaintiff regarding the Tiana account.  (Id.)  The plaintiff alleges the second employee was listening in on the conversation between the plaintiff and the first male employee but the plaintiff was unaware of such eavesdropping.  (Id. at ¶11.)  The defendants' employees did not inform the plaintiff at any time during the conversation that the conversation may be monitored by an individual outside the conversation.  (Id. at ¶ 12.)

**B.     Procedural Background**

The plaintiff filed his original class action complaint on January 4, 2006, (Doc. No. 1), and alleged two causes of action under California's privacy statutory scheme, Cal. Penal Code § 630 et seq. (Original Complaint ¶¶ 6-7.)  Upon a declaration of one of defendants' vice presidents disavowing any recording of phone calls by the defendants, the plaintiff voluntarily dropped the first cause of action for improper recording and filed a first amended complaint on April 3, 2006.

---

[1] These debt collection phone calls are handled through call centers throughout the United States.  (Declaration of Maria Thompson-Davies in Support of Defendants' Opposition Brief Regarding the Scope of Discovery ¶ 4.)  The call center that services California accounts is not located in California, but in Chandler, Arizona, which is important in light of Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95 (2006).

(Doc. No. 6.) The first amended complaint retained the second cause of action, which is based on the improper monitoring of phone calls without the consent of both parties. (Compl. at ¶ 24.)

On September 15, 2006, the defendants filed a motion for judgment on the pleadings. (Doc. No. 25.) The plaintiff filed his opposition to the defendants' motion on October 2, 2006, (Doc. No. 26), and the defendants filed their reply to the opposition on October 6, 2006. (Doc. No. 27).

## DISCUSSION

**A.      Legal Standard**

A motion for judgment on the pleadings is prescribed by Federal Rule of Civil Procedure 12(c). (Doc. No. 25.) The rule states:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. Fed. R. Civ. Pro. 12(c).

A Rule 12(c) motion is properly granted "when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." Nelson v. City of Irvine, 143 F.3d 1196, 1200 (9th Cir. 1998). The court assesses both the complaint and matters for which judicial notice is proper and grants judgment on the pleading when it appears "beyond doubt that the [non-moving party] cannot prove any facts that would support his claim for relief."[2] Morgan v. County of Yolo, 436 F. Supp. 2d 1152, 1155 (E.D. Cal. 2005)(quoting R.J. Corman Derailment Services, LLC v. Int'l Union of Operating Engineers, Local 150, AFL-CIO, 335 F.3d 643, 647 (7th Cir.2003)); see also Hal Roach Studios, Inc. V. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).

In ruling on a motion for judgment on the pleadings, the court may not go beyond the pleadings in reaching its decision. Hal Roach Studios, Inc., 896 F.2d at 1550. If the parties

---

[2] A motion for judgment on the pleadings is functionally similar to a motion to dismiss. Morgan, 436 F. Supp. 2d at 1154-55 (stating that a Rule 12(c) operates in much the same manner as a motion to dismiss under Rule 12(b)(6)). "The primary distinction between a Rule 12(b)(6) motion and a motion for judgment on the pleadings is one of timing. Rule 12(b)(6) motions are typically brought before the defendant files an answer, while a motion for judgment on the pleadings can only be brought after the pleadings are closed." Id. at 1155.

1  present materials outside the pleadings and the court does not exclude them, the motion for
2  judgment on the pleadings is properly treated as a summary judgment motion and dealt with as
3  such. Fed. R. Civ. Pro. 12(c).  When the court decides to treat the Rule 12(c) motion as one for
4  summary judgment, it must give all parties "reasonable opportunity to present all material made
5  pertinent to such a motion by Rule 56." Id.  To satisfy the Rule 12 reasonable opportunity
6  requirement, "a district court need only apprise the parties that it will look beyond the pleadings to
7  extrinsic evidence and give them an opportunity to supplement the record." Bank Melli Iran v.
8  Pahlavi, 58 F.3d 1406, 1408 (9th Cir. 1995).  Rather than requiring formal notice, however, the
9  Ninth Circuit inquires "whether the party against whom summary judgment was entered was
10 'fairly apprised that the court would look beyond the pleadings and thereby transform the 12(b)
11 motion to dismiss into one for summary judgment.'" Olsen v. Idaho State Bd. of Med., 363 F.3d
12 916, 922 (9th Cir. 2004) (quoting Garaux v. Pulley, 739 F.2d 437, 439 (9th Cir. 1984) (citation
13 omitted)).

14       In the instant case, the defendants referenced materials outside of the pleadings in support
15 of their motion for judgment on the pleadings.  (Memo. ISO Motion at 3-7; Doc. Nos. 16, 23.)
16 The plaintiff has been aware of the extrinsic materials presented to the court.  (Opp. at 8-12.)  In
17 the plaintiff's opposition memorandum and at oral argument, (Opp. at 8), plaintiff acknowledged
18 the court's ability to treat the defendant's motion as one for summary judgment in light of the
19 additional materials. See Townsend v. Columbia Operations, 667 F.2d 844, 849-850 (9th Cir.
20 1982) (counsel was on notice that court could treat Rule 12(b) motion as a motion for summary
21 judgment where outside matters were submitted and discussed at oral argument in relation to the
22 motion).  The court will consider the materials submitted by the defendants and convert this
23 motion to one for summary judgment.

24       A court should grant summary judgment where "there is no genuine issue as to any
25 material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.
26 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A material issue of fact is a question
27 that a jury must answer to determine the rights of the parties  under the applicable substantive law.
28 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Act Up!/Portland v. Bagley, 988 F.2d

868, 873 (9th Cir. 1993).

In considering a motion for summary judgment, the Court must examine all the evidence in the light most favorable to the non-moving party. County of Tuolumne v. Sonora Community Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001); see also United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). The moving party bears "the initial responsibility of informing the district court of the basis for its motion." Celotex Corp., 477 U.S. at 323. To satisfy this burden, the moving party must demonstrate that no genuine issue of material fact exists for trial.[3] Id. at 322. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the non-moving party's case, or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. See id. at 322-23.

Once the moving party demonstrates that there is no genuine issue of material fact, the non-moving party must designate "specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (quoting Fed. R. Civ. P. 56(e)). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Id. The non-moving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 325. Conclusory allegations as to ultimate facts are not adequate to defeat summary judgment. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993).

**B.    Analysis**

    1. California Penal Code §630 et seq. and Kearney v. Salomon Smith Barney

Plaintiff brings his claim for improper monitoring pursuant to California Penal Code §630 et seq. The statute states in relevant part:

> Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication . . . shall be punished by a fine . . . or imprisonment in the county jail . . . or by both that fine and imprisonment. Cal. Penal Code § 632 (West 1999).

---

[3] A dispute is "genuine" when "the evidence presented is such that a jury applying [the appropriate] evidentiary standard could reasonably find for either the plaintiff or the defendant." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The statutory scheme also allows the civil recovery in the form of statutory damages or injunctive relief for plaintiffs who bring an action under Cal. Penal Code §637.2.[4]

The defendants have moved for summary judgment because of the recent California Supreme Court opinion in Kearney v. Salomon Smith Barney, Inc., 39 Cal.4th 95 (2006), which was decided after plaintiff filed his first amended complaint.[5] Both parties agree that Kearney is dispositive on the issue of liability for improper monitoring of phone calls made to California residents by entities outside of California.[6] (Memo. ISO Motion at 1; Opp. at 12).

The plaintiffs in Kearney, California residents, brought a class action lawsuit against the brokerage firm Salomon Smith Barney, for recording phone calls between the plaintiffs and Salomon Smith Barney representative without the plaintiffs' knowledge or consent. Id. at 99. The plaintiffs had opened accounts with the defendant and consequently engaged in numerous phone calls with the defendant's representatives. Id. at 100-01. The phone calls from the defendant originated in Georgia, which has a privacy statue that permits the recording of phone calls if one party to the conversation consents. Id. at 99. The plaintiffs sought damages for all calls to and from California made by the defendant that were improperly recorded and injunctive relief for future recordings, as prescribed by California's privacy statute. Id.

The California Supreme Court held that California state law, which requires the consent of all parties to a phone call for proper recording or monitoring, applies to any call to or from California, even if the call originates in a state with a "one-party consent" law. Kearney, 39 Cal.

---

[4]Cal. Penal Code §637.2, states in relevant:
    (a) Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts:
        (1) Five thousand dollars ($5,000).
        (2) Three times the amount of actual damages, if any, sustained by the plaintiff.
    (b) Any person may . . . bring an action to enjoin and restrain any violation of this chapter, and may in the same action seek damages as provided by subdivision (a). Cal. Penal Code §637.2 (West 1999).

[5]The first amended complaint was filed on April 3, 2006, (Doc. No.6), and the California Supreme Court issued the decision on July 13, 2006.

[6]The improper conduct in Kearney was the non-consensual/surreptitious recording of phone calls between the plaintiffs and defendant, but the statutory basis for the action in Kearney, Cal. Penal Code § 632, is the same statute that proscribes the alleged conduct in the instant case, non-consensual monitoring of phone calls.

1  4th at 128. Thus, for calls from an out of state business to a Californian resident or calls
2  originating in California, any monitoring or recording that occurs must be disclosed to all parties
3  to the conversation.[7] Id. at 117-18, 126.

4  The court reasoned that because there was a true conflict of laws, companies in "one-party
5  consent" states were reasonable in relying on their state laws to properly record phone calls
6  without notice to its California clients prior to its decision on July 13, 2006. Id. Thus, the court
7  denied plaintiffs' statutory damages for phone calls recorded by the defendant, which originated in
8  a "one-party consent" state, because those calls were prior to July 13, 2006. Id. at 129-30.
9  However, the "full range of civil sanction afforded by California law may be imposed for future
10  violations," and the court granted plaintiffs the opportunity to seek injunctive relief. Id. at 131-32.

11  a. The effect of Kearney on plaintiff's statutory damages

12  Here, the defendants argue that they are entitled to summary judgment on the plaintiff's
13  claim for statutory damages because plaintiff's claim is moot in light of Kearney and consequently
14  he lacks standing to represent the class. (Memo. ISO Motion at 3.) The plaintiff concedes that
15  because of the California Supreme Court's decision, he is precluded from seeking statutory
16  damages for any alleged monitoring of calls that occurred prior to July 13, 2006. (Opp. at 12.) The
17  plaintiff argues, however, that the defendant may have monitored phone calls even after the
18  Kearney decision, such that the court should deny defendants' motion and allow the action to
19  continue.

20  Mootness can be understood as standing to maintain a lawsuit. In other words, the
21  plaintiff's requisite personal interest that exists at the commencement of the litigation, i.e.
22  standing, must continue throughout the entire course of the litigation. Cook Inlet Treaty Tribes v.
23  Shalala, 166 F.3d 986, 989 (9th Cir.1999). A case becomes moot if the parties have no legally

---

[7]The California Supreme Court stated that an out-of-state business can comply with California's statute by stating at the outset of the telephone call that the call is being recorded. By making this disclosure, the client no longer has a reasonable expectation of privacy, and thus a claim for invasion of privacy under Cal. Penal Code §630 et seq. can be defeated. Kearney, 39 Cal.4th at 105; see Cal. Penal Code §632 ("The term 'confidential communication' includes any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication . . . in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.").

1  cognizable interest in the outcome of the litigation. Sample v. Johnson, 771 F.2d 1335, 1338 (9th
2  Cir. 1985). In other words, if there is no longer a possibility that a plaintiff can obtain effective
3  legal relief through the litigation, that claim is moot and must be dismissed for lack of jurisdiction.
4  Foster v. Carson, 347 F.3d 742, 745 (9th. Cir.2003) (holding that where there is no possibility the
5  party can obtain the relief they seek, the claim is moot and must be dismissed); Oregon Bureau of
6  Labor and Indus. ex rel. Richardson v. U.S. W. Communications, Inc., 288 F.3d 414, 416 (9th
7  Cir.2002).

8  Plaintiff only alleges one occasion where the defendant improperly monitored a phone
9  conversation. (Compl. ¶¶11-14.) Specifically, on or around October 20, 2005 one of defendants'
10 employees eavesdropped on a conversation between plaintiff and another of defendants'
11 employees. (Compl. ¶11.) The defendants called the plaintiff from Arizona, a "one-party
12 consent" state. (Declaration of Maria Thompson-Davies in Support of Defendants' Opposition
13 Brief Regarding the Scope of Discovery ¶ 4.) Capicchioni has no legally cognizable remedy as by
14 his own admission all alleged monitoring by the defendant prior to July 13, 2006 is excused under
15 Kearney.

16 Because the plaintiff can no longer seek monetary relief from the courts, the plaintiff lacks
17 standing to represent the class for statutory damages. A class action lawsuit does not do away with
18 the standing requirements. Warth v. Seldin, 422 U.S. 490, 504 (1975). Specifically, any aspiring
19 class representative must show "the requisite case and controversy between [himself] personally
20 and the [defendants]." Id.; O'Shea v. Littleton, 414 U.S. 488, 494 (1974); see also Allee v.
21 Medrano, 416 U.S. 802, 828-29 (1974) (plaintiff may not acquire standing "through the back door
22 of a class action") (Burger, C.J., concurring in part and dissenting in part). Otherwise, the named
23 representative can not seek relief on behalf of himself or class members. Easter v. American West
24 Financial, 381 F.3d 948, 961 (9th Cir. 2004); Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d
25 1018, 1022 (9th Cir. 2003) ( "[I]n class actions, the named representatives must allege and show
26 that they personally have been injured, not that injury has been suffered by other, unidentified
27 members of the class to which they belong and which they purport to represent.") (citations
28 omitted); Lee v. State of Oregon, 107 F.3d 1382, 1390 (9th Cir. 1997).

The defendant has not suffered an injury representative of the purported class. The only injury for which there is any possible recovery is monitoring that occurred after July 13, 2006 and plaintiff does not allege an injury occurring after that date. Thus, the plaintiff lacks standing to represent a class in an action against the defendants for any alleged post-Kearney monitoring. Plaintiff's argument that the defendants may possibly have monitored phone calls post-Kearney is unavailing. The plaintiff has presented no evidence that improper monitoring occurred after July 13, 2006. An unsubstantiated allegation is insufficient to allow this action to continue.

        b. The effect of Kearney on plaintiff's injunctive relief

The defendants argue that the plaintiff's claim for injunctive relief under Cal. Penal Code §637.2 also fails for lack of standing, due in large part to the fact that plaintiff is not defendants' customer. (Memo. ISO Motion at 5.) Thus, there is no real likelihood that plaintiff will ever be called again by the defendants. Id. Plaintiff responds that he was in fact called by the defendants on multiple past occasions even though he is not defendants' customer. (Opp. at 13.) He argues that it can be inferred that if he was called previously as a non-customer that he may be called in the future as a non-customer. Id. The plaintiff cites to Kearney in support of his argument because the California Supreme Court remanded that case to allow the plaintiffs to pursue injunctive relief.

The constitutional requirement of standing consists of three elements: (1) injury in fact; (2) causation; and (3) redressability.[8] Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); City of Los Angeles v. Lyons, 461 U.S. 95, 102-03 (1983). In the context of injunctive relief, which is a prospective remedy, the plaintiff must additionally establish "a sufficient likelihood that he will again be wronged in a similar way." Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1081 (9th Cir.2004) (quoting Lyons, 461 U.S. at 111). The plaintiff must show that the threat of future injury is particular and concrete to himself. O'Shea, 414 U.S. at 496-97; Canatella v. State of California, 304 F.3d 843, 852 (9th Cir. 2002) (stating that in the context of injunctive

---

[8] The showing of standing falls upon the plaintiff, "with the manner and degree of evidence required at the successive stages of litigation." Lujan, 504 U.S. at 561 (stating that "at the summary judgment level, the plaintiff must 'set forth' by affidavit or other evidence 'specific facts'") (citations omitted).

relief, a plaintiff must make a showing that he suffered a particularized legal harm coupled with a sufficient likelihood that the harm will be repeated); Nelsen v. King County, 895 F.2d 1248, 1252 (9th Cir. 1990) (stating that the plaintiff can not aver to speculative contingencies to show injury but must establish the real likelihood of particularized harm). If the plaintiff fails to establish standing, he may not seek relief on behalf of any purported class. Doe v. Unocal Corp., 67 F. Supp. 2d 1140, 1142 (C.D. Cal.1999).

To obtain injunctive relief, a plaintiff must establish that the threatened future harm is "actual, imminent, not conjectural or hypothetical." Lyons, 461 U.S. at 105; Nelsen, 895 F.2d at 1250-51 ("There must be a 'demonstrated probability' that the plaintiff will again be among those injured . . . we prefer to describe 'probability' qualitatively, as requiring a very significant possibility, not quantitatively, as mandating a 'greater than fifty percent' likelihood.") (citations omitted). Evidence of past violations are relevant to whether there is a real and immediate threat of future injury warranting injunctive relief. O'Shea, 414 U.S. at 497. But past experience with improper conduct does not in itself establish standing without some continuing, present adverse effect. O'Shea, 414 U.S. at 496-97. Past improper conduct is not dispositive on the issue of whether there is in fact a real and imminent possibility of future injury. See Hodgers-Durgin v. De La Vina, 199 F.3d 1037 (9th Cir. 1999) (holding that because the allegedly improper conduct occurred once in ten years in the past, there was no likelihood that it would occur again).

If implying that a plaintiff must be a customer to meet the Article III standing requirement, defendants' argument goes too far.[9] (Memo. ISO Motion at 5.) To be sure, an individual's status as a customer is particularly relevant to the inquiry of whether there is a real likelihood of future injury. See Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1138 (9th Cir. 2002) (relying on plaintiff's status as a frequent patron of the defendant's store to establish standing for injunctive relief); see also Connecticut Office of Consumer Counsel v. F.C.C., 915 F.2d 75, 78 (2d Cir.

---

[9] The plaintiff argues that if the Court adopts the standing analysis suggested by the defendants, any defendant may avoid injunctive relief by simply waiting to be sued and arguing against standing by promising not to call the named class representative. (Opp. at 13.) This is not the inevitable result of a standing analysis in the context of injunctive relief. See Lyons, 461 U.S. at 104-05. If the class representative is a customer of the defendant, as in Kearney, or can in some other way show a real likelihood of future injury, the defendants could not circumvent possible injunctive relief.

1990); Hamelin v Allstate Insurance Co., 2002 WL 441581, at *3 (C.D. Cal. Mar. 12, 2002) (stating that where the plaintiff was not a policyholder of the defendant, there was no likelihood of future injury); cf. Sundance Land Corp. v. Community First Federal Savings and Loan Ass'n, 840 F.2d 653, 661 fn.10 (9th Cir. 1988) (clarifying that persons other than customers can show standing for relief under statute). But customer status does not by itself determine whether the plaintiff has established the requisite threat of future injury. Courts must undergo the traditional standing analysis for injunctive relief.

The only evidence plaintiff presents in response to defendants' challenge to plaintiff's standing are the prior phone calls he received from the defendants. (Opp. at 13.) In essence, the plaintiff alleges that he has become a *de facto* customer by the defendants' previous conduct. Id. This argument is unavailing because a showing of past improper conduct by itself is not sufficient to establish standing for injunctive relief. Lyons, 461 U.S. at 102, 103. Plaintiff's reliance on Kearney, 39 Cal. 4th at 130-31, where the California Supreme Court allowed the plaintiffs to pursue injunctive relief, is misplaced. In Kearney, the plaintiffs were actual customers of the defendant and were likely to be called again. Id. at 101-02. Here, the plaintiff is not a customer of defendant and does not have a continuing relationship with the defendants necessitating any future phone calls. A series of prior phone calls to the plaintiff stemming from an incorrectly dialed number in itself is insufficient to carry the plaintiff's burden to establish standing for injunctive relief.

At oral argument and in his memorandum, plaintiff states that because he drives and finances cars, it "is not a stretch to believe that [he] may end up in a telephone conversation with [defendants] in the future." (Opp. at 13.) However, the test for standing in the injunctive relief context is not "less than a stretch" but a showing of a definitive likelihood of future harm to the plaintiff. O'Shea, 414 U.S. at 496-97. Plaintiff has not established a personal likelihood of future improper conduct by the defendants. As with monetary damages, the plaintiff can not represent a class of individuals who seek injunctive relief when he himself does not have standing for

1 injunctive relief.[10] Lierboe v. State Farm Mutual Auto Insurance Co., 350 F.3d 1018, 1023 (9th
2 Cir. 2003); B.C. v. Plumas Unified School Dist., 192 F.3d 1260, 1264 (9th Cir. 1999).
3       c. Plaintiff's Catalyst Theory
4       Lastly, the plaintiff argues that the court should not dispose of the entire action but instead
5 allow the plaintiff to proceed for attorney's fees under the "catalyst" theory utilized in Graham v.
6 Daimler Chrysler, 34 Cal.4th 553 (2004).  The plaintiff asserts that in class action litigation, if the
7 plaintiff's legal action causes the defendant to remedy the alleged violation prior to the resolution
8 of the case, the plaintiff's attorney should be allowed to recover attorney's fees for being the
9 "catalyst" for the rectification. (Opp. at 16.)  The defendants responds that Graham is
10 distinguishable from the instant case, particularly because it was a clarification in the law that
11 forced the defendants to modify their conduct. (Defendant's Memorandum In Support of Motion
12 for Judgment on the Pleadings at 5-6.)
13       In Graham, the defendant, a car manufacturer, marketed certain trucks having a towing
14 capacity more than three times their actual towing capacity. Graham, 101 P.3d at 561-62.
15 Plaintiffs filed a nationwide class action against the defendants for breach of express warranty. Id.
16 at 562-64.  Less than three weeks later, the defendants issued an offer to all purchasers of the
17 trucks in question to replace or repurchase those trucks. Id.  The plaintiffs' attorney sought
18 attorney's fees for primarily causing the defendants to provide relief to its customers who bought
19 the trucks. Id.  The California Supreme Court allowed the action for attorney's fees to proceed
20 under the catalyst theory. Id. at 584.
21       The Graham case is distinguishable.  In Graham, the court applied the catalyst theory
22 because the court found a causal connection between the relief obtained by the defendant's
23 customers and the plaintiffs' litigation. Id. at 573-77. In the instant case, there is no such showing.
24 As the defendants assert, it is more likely that the Kearney decision brought about the defendants'
25 change in policy to stop monitoring in California.  As a result, the plaintiff has failed to make any
26 showing of causality as required to recover attorney's fees under a "catalyst theory."
27
28       [10]Having determined the plaintiff lacks standing to pursue injunctive relief, the Court does not need to address the defendants' argument that Kearney renders the plaintiff's claim moot.

**CONCLUSION**

For the reason stated herein, the Court **GRANTS** summary judgment in favor of the defendants on the plaintiff's claim hereby terminating this case.

**IT IS SO ORDERED.**

DATED: November 7, 2006

*Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**